**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE M. CARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20 CV 183 DDN |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Nicole M. Carron for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*  The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff Nicole Carron, who was born on May 26, 1986, protectively filed her SSI application on September 4, 2018. (Tr. 101-06.) She alleged disability due to arthritis, degenerative disc disease, spondylolisthesis, severe foraminal stenosis on the left side, pinched nerves, severe sciatic pain, mild narrowing of neural foramina, attention deficit

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. See 42 U.S.C. § 405(g) (last sentence).

disorder ("ADD"), panic disorder, bilateral L5 pars defect,[2] moderate right severe left foraminal stenosis, and depression.  Plaintiff's application was denied, and she requested a hearing before an administrative law judge (ALJ).  (Tr. 67, 73.)

On November 7, 2019, plaintiff testified before an ALJ.  (Tr. 25-52.)  On December 2, 2019, the ALJ denied plaintiff's application.  (Tr. 7-24.)  The Appeals Council denied plaintiff's request for review on June 25, 2020. (Tr. 1-4.) The decision of the ALJ therefore stands as the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II.  MEDICAL AND OTHER HISTORY

The following is plaintiff's medical and other history relevant to her appeal.

On October 28, 2018, plaintiff completed SSA Form 3373, reporting that she is unable to stand, "walk right," bend, or lift.  She stated that she uses a cane to avoid stumbling and that she cannot lift more than eight pounds.  She is able to perform personal care independently without reminders.  She prepares her own meals and does housework, with assistance from her eight-year-old son.  She is able to drive herself and goes grocery shopping twice per month, receiving assistance from her son to put items in the shopping cart and in her trunk.  Her hobbies and interests include movies, spending time with her son, fishing, and swimming.  She can walk about 20 steps before needing to rest.  She gets along with authority figures, and she can follow written instructions "somewhat ok" and spoken instructions "ok."  (Tr. 162-67.)

On March 9, 2017, plaintiff underwent an MRI of her lumbar spine, which indicated a severe grade 1-2 spondylolisthesis secondary to bilateral pars defect at L5-S1, as well as bilateral significant foraminal stenosis, left greater than right.  (Tr. 292.)

---

[2] "Pars defect," or spondylolysis, is a stress fracture of the bones of the lower spine. https://www.ortho.wustl.edu/content/Patient-Care/6882/Services/Pediatric-and-Adolescent-Orthopedic-Surgery/Overview/Pediatric-Spine-Patient-Education-Overview/Spondylolisthesis.aspx.

On April 18, 2017, plaintiff saw Kevin Rutz, M.D., at Orthopedic Specialists. Plaintiff reported her back pain as sharp, aching, burning, and cramping, and made worse by bending, sitting, standing, walking, increased activity, and physical therapy.  A lumbar x-ray revealed a grade 2 spondylolytic spondylolisthesis[3] at L5-S1 with advanced disc degeneration.  (Tr. 383.)  Plaintiff had difficulty with toe walking on the left and a positive straight leg raise on the left with reproduction of low back pain and left lower extremity discomfort.  Plaintiff also had diminished lumbar flexion and extension with reproduction of low back pain, as well as tenderness over the midline and left lumbar region.  Because plaintiff wished to wait to have surgery for as long as possible, Dr. Rutz ordered a left L5 selective nerve root block.  (Tr. 384-85.)  Plaintiff later canceled the nerve root block injection due to anxiety.  (Tr. 382.)

On August 10, 2017, plaintiff saw Jay Liss, M.D., a psychiatrist at PCMH Counseling.  Plaintiff reported depression due to physical limitations, but said she was "managing ok."  She also reported panic episodes one to two times per week.  Plaintiff displayed normal appearance, attitude, motor ability, thought process, orientation, and insight and judgment.  Dr. Liss prescribed clonazepam, paroxetine, Adderall, and tramadol. (Tr. 214.)

On December 21, 2017, plaintiff followed up at PCMH Counseling. Plaintiff reported episodes of depression and frequent panic episodes.  Plaintiff also reported frequent fighting with her husband.  Dr. Liss noted plaintiff's depressed affect and fair insight and judgment; otherwise, plaintiff displayed normal appearance, attitude, motor ability, thought process, and orientation.  Dr. Liss discontinued plaintiff's prescription for paroxetine.  (Tr. 215.)

On April 16, 2018, plaintiff reported to St. Genevieve County Memorial Hospital for an annual back check-up.  Plaintiff stated that she was doing all normal activities, but she had reached a plateau of tolerability.  Jonathan Bird, M.D., noted that plaintiff appeared

---

[3] "Spondylolisthesis" occurs when a vertebra slips out of place and onto a vertebra below, which may put pressure on a nerve and cause lower back or leg pain. https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis.

comfortable, though methodical and deliberating when getting up from her chair or onto the examining table.  Dr. Bird also noted that plaintiff previously opted for conservative management of her back pain, rather than surgery, stating that she was "too young to have back surgery."  (Tr. 244-45.)

On April 24, 2018, plaintiff followed up with Dr. Liss, reporting marital problems and family stress, including that her twelve-year-old stepdaughter was suicidal.  Plaintiff stated that she was feeling overwhelmed.  Plaintiff displayed normal appearance, attitude, motor ability, thought process, orientation, and insight and judgment.  (Tr. 216.)

On September 20, 2018, plaintiff saw Michael Moore, M.D., at Big Springs Medical Clinic.  Dr. Moore noted plaintiff's irregular gait, with stiffness and imbalance, and her limited range of motion and tenderness in her lumbar area.  Dr. Moore also noted plaintiff's reports of anxiety and back pain.  Plaintiff reported that she has a lot of pain on her back and sometimes uses a cane to walk.  She stated that she had previously scheduled back surgery, but she canceled because the thought of the surgery made her panic.  Plaintiff's PHQ-9 score was 13, denoting a moderate level of depression severity.  (Tr. 263-65); *see also* Kurt Kroenke, MD, et al., The PHQ-9: Validity of a Brief Depression Severity Measure, J. OF GEN. INTERNAL MED., Sep. 2001, 606-613, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/.

On October 16, 2018, plaintiff went to Ozarks Medical Center for a follow-up physical exam with Julie Gunter, F.N.P.  Plaintiff reported chronic back pain with sciatica in her left leg, and she exhibited moderate tenderness in the lumbosacral spine.  Her pain level was 7/10.  She characterized the pain in her left lower back and in her posterior left leg as severe.  Plaintiff stated that the pain was brought on by sitting, standing from a sitting position, and walking.  (Tr. 274-76.)

On October 30, 2018, plaintiff returned to Dr. Liss for follow-up.  She reported multiple stressors, including going through a divorce, but she said that she was "functioning ok."  Plaintiff displayed normal appearance, attitude, motor ability, thought process, orientation, and insight and judgment.  (Tr. 217.)

On December 4, 2018, Steven Akeson, Psy.D., a psychological consultant, concluded that plaintiff's mental impairments were non-severe.  Dr. Akeson found that plaintiff had mild difficulty understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  Dr. Akeson noted plaintiff's reports that she had some situational stressors, including going through a divorce.  He also noted that plaintiff completes most of her daily activities independently, including personal care, preparing simple meals to eat, driving, and shopping.  He discussed the assistance that plaintiff's son provides, including putting on shoes, laundry, and cleaning.  (Tr. 58-59.)

On January 31, 2019, plaintiff was seen by D.J. Gross, F.N.P., at Ozarks Medical Center.  Ms. Gross noted plaintiff's tenderness in her medial low back.  (Tr. 375, 376.)  An x-ray performed on the same day found advanced degenerative disc disease and probable bilateral pars defects and anterior subluxation at L5-S1.  (Tr. 340.)

On March 21, 2019, plaintiff saw Dianna Owen, A.P.R.N., for chronic low back pain.  Plaintiff reported moderate to severe low back pain, aggravated by bending, twisting, lifting, standing, and walking.  Plaintiff also reported 25 to 50 percent symptom benefit with medication, heat, and ice.  Upon examination, plaintiff exhibited mild tenderness in her left and right flanks, as well as medial low back, upon palpation; had a positive bilateral straight leg raise; exhibited an antalgic[4] and painful gait; and was impaired in tandem walking, walking on toes, and walking on heels.  (Tr. 289-92.)

On April 30, 2019, plaintiff returned to Dr. Liss for follow-up and reported panic episodes, which resulted in two hospitalizations since her last appointment at PCMH on October 30, 2018.  Plaintiff displayed normal appearance, attitude, motor ability, thought process, orientation, and insight and judgment.  (Tr. 346.)

---

[4] "Antalgic gait" refers to unnatural movement to avoid pain.  https://www.merriam-webster.com/medical/antalgic.

On May 6, 2019, plaintiff underwent a CT/myelogram, which showed advanced degenerative disc disease, grade 2 spondylolisthesis at L5-S1, bilateral L5 spondylolysis, and severe left and moderate right foraminal stenosis.  (Tr. 298.)

On June 26, 2019, plaintiff returned to Ms. Owen with chronic, progressive low back pain and bilateral lower extremity symptoms.  Plaintiff exhibited mild tenderness upon palpation, antalgic gait with a left limp, markedly diminished lumbar range of motion, normal ability to walk on her heels and toes, and a negative bilateral straight leg test. Plaintiff stated that she was not interested in physical therapy, pain clinic interventions, or surgery.  (Tr. 298.)

**ALJ Hearing**

On November 7, 2019, plaintiff testified at a hearing before an ALJ.  (Tr. 25-52.) Plaintiff testified that she sometimes uses a cane for stability.  (Tr. 30.)  She has not participated in physical therapy or injection therapy since 2017.  (Tr. 32.)  She can stand for 20 minutes at a time and can walk for 10 to 15 minutes before she needs to lean on something.  (Tr. 40.)  She can sit for about fifteen minutes at a time, and she must lay down two to four times per day, for thirty minutes to an hour each time.  (Tr. 41.)  It is difficult to stoop, push, pull, and reach.  She cannot bend.  (Tr. 42.)  Her pace for daily activities is five times slower since onset of her back pain.  (Tr. 51.)

Pain interferes with her sleep and concentration.  (Tr. 42-43.)  She cannot focus on a task for more than 30 minutes.  (Tr. 44.)  She has panic attacks and crying spells every day, triggered by stress and being around other people.  (Tr. 46-48.)

Her son helps her with household chores, such as sweeping, mopping, and laundry. (Tr. 38.)  She cooks for herself.  (Tr. 34.)  She alternates sitting and standing during cooking and household chores due to discomfort.  (*Id*.)

**III.  DECISION OF THE ALJ**

On December 2, 2019, the ALJ issued a decision that plaintiff was not disabled under Title XVI of the Social Security Act.  (Tr. 7-24.)  At Step One, the ALJ found that

plaintiff had not engaged in substantial gainful activity since September 4, 2018, the day plaintiff filed her application.  (Tr. 12.)

At Step Two, the ALJ found that plaintiff suffers from the following severe impairments: lumbar degenerative disc disease with radiculopathy, pars defects, and anterior subluxation.[5]  (*Id.*)  The ALJ found that plaintiff's mental impairments – ADD, panic disorder, and major depressive disorder – did not cause more than a minimal limitation in plaintiff's ability to perform work and were therefore non-severe.  (Tr. 13.) The ALJ noted that plaintiff's mental impairments are managed with medication, that she has limited history of counseling, and that she has no history of psychiatric hospitalization. (*Id.*)

At Step Three, the ALJ found that plaintiff had no impairments or combination of impairments that met or were the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments.  (Tr. 15.)

At Step Four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b).  While the acknowledging the severe impairments found in Step Two, the ALJ determined that plaintiff's symptoms were not so pervasive as to be disabling.  (Tr. 17.)  The ALJ found that plaintiff retains the ability to care for her son; perform personal care, generally independently and without reminders; perform household chores, sometimes with help from her son; get along with others, including authority figures; and follow written and spoken instructions "ok." (Tr. 18.) The ALJ also noted that plaintiff reported doing all normal activities; spending time outside and on the river with her son; and spending time at her brother's residence, including coming into contact with dogs, cats, chickens, and farm animals.  (*Id.*)  Additionally, the ALJ noted that plaintiff's symptoms remained relatively stable, despite plaintiff declining surgical intervention, physical therapy, and injection therapy.  (Tr. 17.)

---

[5] "Anterior subluxation," or hyperflexion strain, means a localized, ligamentous injury to the cervical spine.  JD Green et al*., Anterior subluxation of the cervical spine: hyperflexion sprain*, 2 Am. J. Neuroradiology 243 (1981).

At Step Five, the ALJ found that plaintiff was capable of performing jobs existing in significant numbers in the national economy.  (Tr. 19.) Accordingly, the ALJ found that plaintiff was not disabled under the Social Security Act at any time from September 4, 2018.  (Tr. 20.)

## IV.  GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or could be expected to last for at least 12 continuous months.  42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 416.920 (a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant has the RFC to perform her past relevant work (PRW). 20 C.F.R. §

416.920(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 416.920(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues on appeal that the ALJ (1) failed to properly consider plaintiff's subjective reports of pain when considering her physical RFC and (2) failed to properly evaluate plaintiff's mental impairments at Step Two.

### Plaintiff's Subjective Reports of Pain

Plaintiff argues that, when considering plaintiff's RFC, the ALJ failed to explain her conclusion that plaintiff's subjective reports of pain were not consistent with the medical and other evidence.  She asserts that the ALJ's discussion of plaintiff's statements did not provide specific reasons that were supported by the evidence.  She also contends that the ALJ did not explain how plaintiff's course of treatment was inconsistent with her subjective reports.  She alleges that the ALJ improperly considered some of plaintiff's activities, such as completing household chores and spending time outdoors and with others.  Lastly, she argues that the ALJ failed to consider the consistency of plaintiff's initial reports with her statements to medical providers.  The Court disagrees.

Part of the RFC determination includes an assessment of plaintiff's credibility regarding subjective complaints. Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).  The *Polaski* factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski*, 739

F.2d at 1322; see also 20 C.F.R. § 416.929(c)(3).  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Here, the ALJ considered the *Polaski* factors.  The ALJ is "not required to discuss each *Polaski* factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)).  When considering plaintiff's subjective complaints, the ALJ noted that plaintiff's physical examinations generally indicated limited abnormalities, including normal range of motion, gait and station, and muscle strength and tone, though plaintiff also exhibited occasional antalgic gait and positive straight leg tests.  (Tr. 17, 289-92, 298, 340.)  The ALJ also noted that plaintiff's self-reported eight-pound lifting restriction and need to use a cane were not supported by or noted in the medical evidence.  (Tr. 18.)

In the ALJ's consideration of plaintiff's daily activities, the ALJ noted that plaintiff prepared simple meals; shopped for groceries, sometimes with her son's help; performed household chores such as dishes, laundry, and sweeping, also with her son's help; drove independently; and stayed home alone and left home alone.  (Tr. 18, 34, 38, 162-67.)  As to plaintiff's objection to the ALJ's characterization and consideration of her activities, although activities such as light housework are not alone sufficient to prove a claimant can work, the extent of plaintiff's activities, when considered in conjunction with the medical record in this case, supports the ALJ's decision. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

The regulations for pain evaluation stress that the ALJ should consider the type of treatment that the claimant receives when evaluating pain.  *See* 20 C.F.R. § 416.929.  In doing so, the ALJ may consider conservative treatment when evaluating credibility. *See Gonzales v. Barnhart*, 465 F.3d 890, 892 (8th Cir. 2006).  Plaintiff was treated with medication. See *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (if claimant can control her impairment by treatment or medication, she fails to show disability).  The record shows that plaintiff reported some improvement with her pain with conservative

treatment, including a 25 to 50 percent improvement with medication, heat, and ice.  (Tr. 289-92.)    Thus, the ALJ considered plaintiff's treatment history in the disability determination.

Because the ALJ considered plaintiff's subjective complaints and provided specific reasons for discounting her statements that were not supported by the record, the Court concludes that the ALJ's decision regarding pain is supported by substantial evidence.

**The ALJ's Evaluation of Mental Impairments at Step Two**

Plaintiff argues that the ALJ erred in finding that plaintiff's mental impairments were not severe at Step Two of her analysis.  She argues that the ALJ should not have relied on the opinion of Dr. Akeson, a non-examining psychological consultant.   She also contends that the ALJ should have further developed the record regarding plaintiff's mental impairments before issuing a decision.

The plaintiff has the burden of proving that her impairments are severe, meaning that the impairments limit one or more basic work activities.  *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 416.912(a).   If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of Step Two.  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

The ALJ's conclusion that plaintiff's mental impairments are non-severe is supported by substantial evidence.  When plaintiff visited Dr. Liss, she regularly exhibited normal appearance, speech, attitude, motor ability, thought process, orientation, and insight and judgment.  (Tr. 214-17, 345-46.)  She indicated that she was functioning "ok" despite multiple stressors.  (Tr. 217.)  The ALJ also noted that plaintiff's mental impairments were managed on a routine outpatient basis, and plaintiff exhibited little, if any, change during the relevant period, despite multiple family stressors.  (Tr. 13, 214-15, 345-46.)

Plaintiff also contends that the ALJ inappropriately relied on the opinion of Dr. Akeson.  Plaintiff argues that the ALJ should not have afforded significant weight to Dr. Akeson's opinion because his review occurred prior to the submission of additional

medical evidence regarding plaintiff's mental health treatment.  Specifically, after Dr. Akeson completed his review, plaintiff submitted records from her treatment by Dr. Liss on October 30, 2018, and April 30, 2019.  (Tr. 345-46.)

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003).  The Court disagrees that the ALJ's reliance on Dr. Akeson's report was misplaced.  Contrary to plaintiff's claim, the records from plaintiff's treatment on October 30, 2018, were already included in the record when Dr. Akeson completed his review. (Tr. 217.)  Only plaintiff's treatment records from her visit on April 30, 2019, were missing from the administrative record at the time of Dr. Akeson's review, as the visit occurred after Dr. Akeson's review but before the ALJ hearing.  (Tr. 345.)  The ALJ did not rely on Dr. Akeson's opinion to make her finding regarding plaintiff's mental impairments, but rather noted that Dr. Akeson's opinion was consistent with the ALJ's findings and the record as a whole.  (Tr. 14.)  Even without Dr. Akeson's opinion, substantial evidence existed in the record to support the ALJ's finding.

Lastly, plaintiff argues that the ALJ failed to fully and fairly develop the record regarding plaintiff's mental impairments.  It is well settled that an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012).  This duty exists independently of the claimant's burden to press her case because the social security disability hearing is non-adversarial. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  An ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (quoting *Stormo*, 377 F.3d at 806).  "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).  The issue of full and fair development of the record is decided on a case-by-case basis. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

In the present case, the ALJ did not leave the issue of plaintiff's mental impairments undeveloped.  The ALJ assessed plaintiff's mental impairments using treatment notes from Dr. Liss, plaintiff's psychiatrist.  In his treatment notes, Dr. Liss indicated that plaintiff generally exhibited normal alertness and orientation, normal mood and affect, normal behavior, and normal judgment and thought content.  (Tr. 13, 214-17, 345-46.)  The medical evidence from Dr. Liss, plaintiff's treating psychiatrist, provides a sufficient basis for the ALJ's decision.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


**_____/s/   David D. Noce_____**
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 18, 2021.